ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2009 MAR 31 PM 2: 32
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| TARA LYNN LYLES a/k/a TARA LYNN PRICE,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) CV 308-008<br>) (Formerly CR 306-001)<br>)<br>)<br>) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Tara Lynn Lyles, an inmate currently incarcerated at the Mariana Federal Prison Camp in Mariana, Florida, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On January 11, 2006, a federal grand jury indicted Petitioner and two codefendants in a seven count indictment. United States v. Lyles, Criminal Case No. 306-001, doc. no. 1 (S.D. Ga. Jan. 11, 2006) (hereinafter "CR 306-001"). Count 1 charged Petitioner with conspiracy to possess with intent to distribute and to distribute over 50 grams of a mixture containing methamphetamine in violation of 21 U.S.C. § 846. Id. Count 4 charged Petitioner with possession with intent to distribute methamphetamine in violation of 21

U.S.C. § 841(a)(1). Id. Count 5 charged Petitioner with possession of firearms during the commission of drug trafficking offenses in violation of 18 U.S.C. § 924(c). Id. Pursuant to a negotiated plea agreement ("the Agreement"), Petitioner pled guilty to Count 4, possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Id., doc. nos. 67, 69.

At the Rule 11 colloquy, Petitioner's counsel informed the Court,[1] that she had met with Petitioner several times to discuss her case. Rule 11 Tr., p. 8. Furthermore, Petitioner herself informed the Court that she had been afforded adequate time to discuss and prepare her case with counsel and went on to agree that she was satisfied with counsel's preparation of her case. Id. at 8-9. The Court then proceeded to advise Petitioner of the charges in the indictment to which she was pleading as follows:

> Q: Ms. Price,[2] in the indictment before me, count four of the indictment alleges that on or about [the] 1st day of September 2004, in Laurens County in this district and elsewhere you willfully, unlawfully, knowingly and intentionally possessed with the intent to distribute a mixture of a substance containing methamphetamine, a Schedule 2 controlled substance, in violation of the law.
> The penalty certificate indicates that the maximum statutory penalty that might be imposed in the event of your conviction on that charge is not more than 20 years imprisonment; not more than a million dollar fine; three years [of] supervised release and a $100 special assessment.
> Do you understand the charge made in count four and the maximum penalty that might be imposed in the event of your conviction on that charge?

---

[1]Petitioner's Rule 11 hearing was conducted jointly with that of her codefendant, Michael Curtis Poole. CR 306-001, doc. no. 88, p. 3 (hereinafter "Rule 11 Tr."). Petitioner and Mr. Poole consented orally and in writing to the entry of their guilty pleas before a United States Magistrate Judge. Id. at 9-10; doc. nos. 73, 78.

[2]Petitioner is also known as Tara Lynn Price. (See Presentence Investigation Report ("PSI") p. 1; Rule 11 Tr. pp. 2, 6).

2

A: (Ms. Price) Yes, sir.

Id. at 11-12. Following this, the Court summarized the substance of Petitioner's plea agreement. The Agreement contained a provision whereby Petitioner "expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement." Id. at 21-25. The Agreement provides as follows:

> The defendant, as a part of this agreement . . . expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement.
>
> Notwithstanding these waivers, the defendant reserves the right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence, or factual basis of the defendant's entry of a guilty plea pursuant to this agreement), in the event the sentencing Court upwardly departs from the guideline range . . . .

CR 306-001, doc. no. 67 at 2-3.

Notably, the Agreement did preserve Petitioner's "right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence or factual basis of [Petitioner's] entry of a guilty plea pursuant to this [A]greement,)" if the sentencing judge upwardly departed from the United States Sentencing Guidelines range. Id.

Special Agent Rhodes of the Bureau of Alcohol, Tobacco, Firearms, and Explosives then testified as to the factual basis for Petitioner's guilty plea. Rule 11 Tr., pp. 25-33. The Court questioned Petitioner about Agent Rhodes's testimony, with which Petitioner stated she had no disagreement. Id. at 33. The Court prepared a Report and Recommendation recommending that the District Judge accept Petitioner's guilty plea. Id., doc. no. 73.

3

Thereafter the Honorable Dudley H. Bowen, Jr., United States District Judge, adopted the recommendation and accepted Petitioner's guilty plea. Id., doc. no. 78.

Prior to Petitioner's sentencing hearing, the probation officer prepared a PSI and based on Petitioner's involvement with 1.39 kilograms of methamphetamine, the Probation Officer recommended a base offense level of 32. (PSI, ¶ 29). The Probation Officer recommended that Petitioner receive a two level United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1) enhancement for firearms possession. (PSI, ¶ 30). The Probation Officer also recommended that Petitioner receive a three level reduction for acceptance of responsibility USSG § 3E1.1. (PSI, ¶ 35). This determination resulted in Petitioner being assigned a base offense level of 31. (PSI, ¶ 36). With three criminal history points, Petitioner's criminal history category was II, resulting in a total offense level of 31, criminal history category II. (PSI, ¶¶ 44, 62). Counsel for Petitioner filed written objections to the PSI; however, these objections were subsequently withdrawn. CR 306-001, doc. nos. 81-84.

At Petitioner's sentencing, Judge Bowen adopted the facts and guidelines applications in the PSI. Id. at doc. no. 93. Based on these guidelines, Judge Bowen imposed a sentence of 121 months of imprisonment, the low end of the applicable advisory guideline range. Id. Judgement was entered on February 1, 2007. Id. Consistent with the Agreement, Petitioner did not appeal.

Thereafter, Petitioner timely filed her § 2255 motion. Petitioner presents three claims in her motion: (1) her guilty plea was not knowing and voluntariy; (2) she received ineffective assistance of counsel; and (3) Petitioner's waivers of appeal and collateral attacks were "unconstitutionally obtained" because her counsel was ineffective. (Doc. no. 1, p. 1).

Petitioner argues that she plead guilty and agreed to all waivers contained in her guilty plea as a result of her counsel's purported representation that if she were to pled guilty and agree to the waivers, she would receive a downward departure at sentencing pursuant to USSG § 5K1.1. (Id. at 2). Petitioner argues, "But for counsel's misrepresentation, Petitioner would not have voluntarily entered into the Agreement comprising Waivers of all possibility of future sentencing rights." (Id.).

Petitioner maintains that her counsel was ineffective because he "clearly and irrefutably led Petitioner to believe she would receive a sentence that was substantially less than 121 months." (Id. at 3). Petitioner further maintains that at sentencing, "she asked her counsel to address the Court regarding the 5K1.1 downward departure[;] obviously, counsel ignored his client's request and allowed the Court to proceed and his client to unknowingly and involuntarily waive her statutory rights to a direct appeal and all future collateral relief." (Id.). Finally, Petitioner alleges that the Court did not address at any time the issue of the impact or understanding of the direct appeal and collateral attack waivers, and therefore, she claims that she did not voluntarily waive her rights and/or did not knowingly and voluntarily enter into a guilty plea. (Id. at 4-5). The Court will address each claim in turn.

## II. DISCUSSION

### A. No Need for Evidentiary Hearing

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir.

5

1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claim is barred from review or otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case.

**B.     Appeal Waiver**

Petitioner claims in her § 2255 motion that she did not knowingly and voluntarily waive her appeal rights because neither counsel nor the Court explained its significance to her. It is well-settled that a waiver of appeal[3] provision is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the [G]overnment must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275

---

[3] By "appeal," the Court here refers to the right to "appeal or contest, directly or collaterally, [a] sentence." United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993). Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Id. at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

6

F.3d at 1333.

Here, the Agreement that Petitioner signed contains a provision expressly waiving her rights to collateral post-conviction attack of her sentence or the voluntariness, providence, or factual basis for the guilty plea. CR 306-001, doc. no. 67, p. 2 ("The defendant, as part of this agreement and in consideration for the government's promises hereunder, also expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement."). Although there was an exception for filing a direct appeal, but not a collateral attack, of the sentence imposed, this exception excluded attacks on the voluntariness, providence, or factual basis of Petitioner's entry of a guilty plea pursuant to the Agreement. Id. Moreover, Petitioner acknowledged that she:

> had the services of an attorney the defendant believes to be competent . . . that the defendant and the defendant's attorney have discussed possible defense, if any, to the charges in the indictment . . . ; [that Petitioner] weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty pursuant to this Agreement, and has entered this Agreement as a matter of . . . free and voluntary choice.

Id. at 7.[4] Both Petitioner and her attorney signed the Agreement verifying that they had read the Agreement and that the terms of the Agreement accurately represented the terms of the plea agreement. Id. at 9.

Additionally, the Court specifically reviewed the waiver provisions of the Agreement during the Rule 11 proceedings.

---

[4]The Court also asked Petitioner at the Rule 11 hearing if she was satisfied with her counsel's representation and his advice to her concerning her case? Rule 11 Tr., p. 9. Petitioner answered in the affirmative. Id.

7

Q: .... You also have agreed to waive your right to appeal any sentence imposed in this case which is within the sentencing guidelines maximum; do you understand that?

A: (Ms. Price) Yes.

Q: [Y]ou have also agreed to waive your right to file any post conviction collateral attack like a habeas corpus attack concerning the voluntariness, providence or factual basis for the guilty plea you have entered in this case; do you understand that?

A: (Ms. Price) Yes.

Q: You reserve the right to appeal any sentence imposed by the court that is above the sentencing guidelines range applicable to your case; do you understand that portion?

A: (Ms. Price) Yes.

Q: There is a provision in your plea agreement where you state you understand . . . the district court is not bound by the sentencing guidelines in imposing a sentence in your case; do you understand that?

A: (Ms. Price) Yes, sir.

. . .

Q: Ms. Price, has every promise that has been made to you concerning your guilty plea here been spelled out in your plea agreement?

A: (Ms. Price) Yes, sir.

Q: Has anyone made any promise or prophecy, or given you any guarantee concerning the sentence that you will receive in this case . . . Ms Price?

A: (Ms. Price) No, sir.

Rule 11 Tr., pp. 21-25.

Additionally, because the parties consented to proceed with the administration of a

guilty plea before the Court, a Report and Recommendation was prepared recommending the District Judge to accept Petitioner's guilty plea; it is noteworthy that Petitioner did not file any objections to the Report and Recommendation. (See doc. nos. 73, 78).

Petitioner now argues:

> . . . the Court did not engage the Petitioner in a conversation that reflected her understanding of what Waiver of Appeal Rights and future Collateral Attack Rights encompassed. Instead, the Court simply asked had she agreed to waiver her Right to Appeal and her right to file any Post Conviction Collateral Attack such as a Habeas Corpus. Nowhere in the Transcripts can it be found where the Court asked or the Petitioner answered that she understood what the meaning or consequences of these waivers entailed.

(Doc. no. 6, p. 2).

Contrary to Petitioner's argument, the record establishes that the Court explained the consequence of the waivers and questioned Petitioner as to her understanding of the waivers, to which she consistently replied that she did understand.

> Q: .... You also have agreed to waive your right to appeal any sentence imposed in this case which is within the sentencing guidelines maximum; **do you understand that?**
>
> A: (Ms. Price) Yes.
>
> Q: [Y]ou have also agreed to waive your right to file any post conviction collateral attack like a habeas corpus attack concerning the voluntariness, providence or factual basis for the guilty plea you have entered in this case; **do you understand that?**
>
> A: (Ms. Price) Yes.

Rule 11 Tr., pp. 21-25 (emphasis added).

Petitioner also argues that her counsel represented to her that if she pled guilty, she would be sentenced below the mandatory minimum 121 months based on substantial

9

assistance. (Doc. no. 6, p. 3). Petitioner states that "but for Counsel's misrepresentation Petitioner would not have voluntarily entered into the Agreement comprising Waivers of all possibility of future sentencing relief." (Doc. no. 1, p. 2). First, the Court notes that the Agreement contains no cooperation provision. Second, during the Rule 11 hearing, the Court asked Petitioner whether every promise that had been made to her concerning her guilty plea had been spelled out in the Agreement? Rule 11 Tr., p. 25. Petitioner answered affirmatively. Id. The Court also asked Petitioner whether anyone had made any promise or prophesy, or given her any guarantee concerning the sentence that she was to receive? Id. Petitioner answered, "No, sir." Id.

The record clearly supports the conclusion that the Agreement Petitioner signed fully set forth the condition that she was waiving any right to pursue a collateral attack of her sentence or the voluntariness, providence, or factual basis of the guilty plea. The Court repeatedly reviewed the waiver provisions at the Rule 11 hearing and at sentencing, and Petitioner affirmed that she understood and agreed with the terms of the Agreement as explained by the Court. Petitioner gave no indication of any confusion or error. "Solemn declarations in open court carry a strong presumption of verity," and Petitioner's sworn statements before the Court are a "formidable barrier" for her to overcome in these collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Court is aware that Petitioner has challenged the assistance of counsel in entering into the plea agreement, a claim that would, if found to have merit, cast doubt on whether Petitioner validly waived her right to collateral attack of her sentence. However, as discussed below, the Court determines that this claim is without merit, thus supporting the conclusion that Petitioner validly waived

her right to collateral post-conviction attack of his sentence.

C. **Ineffective Assistance of Counsel Claim Not Barred By Waiver**

Notwithstanding the analysis above, Petitioner's claim of ineffective assistance of counsel is not precluded by her appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As it appears that Petitioner is challenging her counsel's performance as it relates to the validity of her plea or waiver (inasmuch as she alleges that but for counsel's purported misrepresentation that she would be sentenced below the low end of the sentencing guidelines, she would not have pled guilty), Petitioner's claim is not barred by the provision in the Agreement waiving her appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Strickland, 466 U.S. at 689; see also Lancaster v. Newsome, 880

F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir.

2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Petitioner argues that her counsel failed to offer her advice and counsel about the consequences of a guilty plea and "misrepresented" that she would be sentenced below the mandatory minimum should she plead guilty. However, the guilty plea transcripts confirm that Petitioner told the Court that she had had enough time to discuss the case and to prepare with her counsel. CR 306-001, Rule 11 Tr., pp. 8-9. The guilty plea transcripts also confirm that Petitioner agreed that she was satisfied with her counsel's preparation and handling of the case. Id. In addition, the Court thoroughly reviewed the Agreement, as well as the rights that would be waived by a guilty plea. Id. at 16, 21-25. The Court also specifically informed Petitioner that the penalty for the charge to which she was about to plead guilty was "not more than 20 years imprisonment; not more than a million dollar fine; three years supervised release and a $100 special assessment." Id. at 11-12. Indeed, Petitioner admits

that the Court advised her that she could be sentenced up to 20 years.[5] (Doc. no. 6, p. 4). The Court also verified that every promise made to Petitioner concerning her guilty plea had been included in the guilty plea. Finally, as noted above, no objections were made by Petitioner to the Report and Recommendation, prepared by the Court, advising the District Judge to accept Petitioner's guilty plea.[6]

Thus, even if the Court were to assume for the sake of argument that despite

---

[5]Petitioner argues:

> [W]hen the Court advised the Petitioner of the 20 Years possibility it was simply informing her of the maximum sentence that was possible[;] however, again the Government is playing on words and pulling from a Sentencing Transcript and placing emphasis on words that is distorting what the Court meant and was doing. The Court was simply informing the Petitioner what it is required to do based on the charged offense. The Court must always inform the defendant of the maximum sentence possible, based upon Indictments. The Government's attempt to sway the Court into believing that the Petitioner stood before it expecting or even believing she would be subjected to a 20 years prison sentence is illogical because Petitioner had a Pre-Sentence Investigation Report that did not raise the offense conduct to the 20 Year maximum.

(Doc. no. 6, pp. 4-5). The Court specifically informed Petitioner:

> The penalty certificate indicates that the maximum statutory penalty that might be imposed in the event of your conviction on that charge is not more than 20 years imprisonment . . . Do you understand the charge made in count four and that maximum penalty that might be imopose[d] in the event of your conviction on that charge.

Rule 11 Tr., p. 12. Although Petitioner chose to believe that this statement was merely an administrative nicety offered by the Court, she did so at her own peril.

[6]The Report and Recommendation provided that Petitioner: fully understood the terms of the Agreement, understood her constitutional and statutory rights, wished to waive these rights, and made the Agreement freely and voluntarily. CR 306-001, doc. no. 73, p. 2.

Petitioner's testimony under oath to the Court, and despite her signed attestation on the Agreement that she understood the charges, her rights as well as the consequences of giving up those rights, along with the penalty she faced, and that she had discussed her case with her counsel, Petitioner still can show no prejudice.

Stated otherwise, prior to Petitioner entering her guilty plea, she was specifically told about the information that Petitioner now claims her counsel failed to convey, and the Court confirmed that Petitioner, having all of this information in mind, wanted to proceed with her guilty plea. Moreover, Petitioner also attested with her signature to the Agreement that she understood the charges and penalties, that with the advice of counsel she had weighed the relative benefits of a trial versus a guilty plea, and that the agreement had been reached with her permission. CR 306-001, doc. no. 67. Petitioner's belated, self-serving allegations about a lack of information and "misrepresentation" from her counsel simply do not ring true in light of the record evidence.

As previously noted, "[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Furthermore, even if counsel failed to adequately explain the Agreement to Petitioner, the Court did so, and again, no prejudice inured to Petitioner. In sum, Petitioner has not established that she was prejudiced in any way by her counsel's performance, and she is not entitled to relief on these claim.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final

15

judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 31st day of March, 2009, at Augusta, Georgia.

*W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE